**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| KITREA JACKSON, TIFFANY JOHNSON, KRISTIN JOURNIGAN, KIERRA BROWN, BIANCA BRUNETTI AND STEPHANIE MEDINA, Individually and on Behalf of All Similarly Situated, | CIVIL ACTION FILE NO: |
| Plaintiffs, | FLSA Collective Action JURY TRIAL DEMANDED |
| v. | |
| GIRLS GALORE, INC. d/b/a/ ALLURE GENTLEMEN'S CLUB, CARMEN POPOVICH, NICHOLAS A. STERGION, VICTOR POPOVICH and JOHN DOES 1-3, | |
| Defendants. | |

**COMPLAINT FOR DAMAGES AND JURY DEMAND**

Plaintiffs KITREA JACKSON, TIFFANY JOHNSON, KRISTIN

JOURNIGAN, KIERRA BROWN, BIANCA BRUNETTI AND STEPHANIE

MEDINA, by and through the undersigned counsel, hereby file this Complaint

against GIRLS GALORE, INC. d/b/a/ ALLURE GENTLEMEN'S CLUB

("Allure"), a Georgia company, CARMEN POPOVICH ("Popovich"), VICTOR

- 1 -

POPOVICH ("Vic"), NICHOLAS A. STERGION ("Stergion") and JOHN DOES 1-3 and allege as follows:

## **INTRODUCTION**

1.

This is an action brought pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA").  Defendants violated the minimum wage and record-keeping requirements of the FLSA. Plaintiffs seek unpaid wages, including "kick-backs," liquidated damages and reasonable attorneys' fees and costs.

2.

Defendant Girls Galore owns and operates a strip club called Allure Gentlemen's Club ("Allure") in Fulton County, Georgia.

3.

Defendant Stergion is the CEO, Secretary, and registered agent of Girls Galore.

4.

Defendant Popovich is the CFO of Girls Galore.

5.

Defendant Vic is the son of Defendant Popovich and co-owns and or co

manages Allure.

6.

Defendants John Does 1-3 are individuals that manage and/or co-own the property owned by Defendants Girls Galore, Stergion, and Popovitch. John Does 1-3 manage the business known as "Allure" on behalf of Defendants Girls Galore, Stergion and Popovich.

## JURISDICTION AND VENUE

7.

This Court has subject matter jurisdiction pursuant to the FLSA and 28 U.S.C. § 1331.

8.

Venue is proper under 28 U.S.C. § 1391 because a substantial part of events or omissions giving rise to this action occurred within the jurisdiction of this Court.

9.

## PARTIES

Plaintiff Kitrea Jackson ("Jackson") was a former employee of the Defendants, having been employed at Allure during the past three years preceding the filing of the instant action.

10.

Plaintiff Tiffany Johnson ("Johnson") was a former employee of the Defendants, having been employed at Allure during the past three years preceding the filing of the instant action.

11.

Plaintiff Kristin Journigan ("Journigan") was a former employee of the Defendants, having been employed at Allure during the past three years preceding the filing of the instant action.

12.

Plaintiff Kiera Brown ("Brown") was a former employee of the Defendants, having been employed at Allure during the past three years preceding the filing of the instant action.

13.

Plaintiff Bianca Brunetti ("Brunetti) was a former employee of the Defendants, having been employed at Allure during the past three years preceding the filing of the instant action.

14.

Plaintiff Stephanie Medina ("Medina") was a former employee of the Defendants, having been employed at Allure during the past three years preceding the filing of the instant action.

15.

The FLSA Class Members are all current and former exotic dancers who worked at Allure located at 2284 Cheshire Bridge Rd NE, Atlanta, Georgia 30324, at any time starting three (3) years before this Complaint was filed, up to the present.

16.

Defendant Girls Galore, Inc. is a Georgia corporation with its principal place of business located at 2284 Cheshire Bridge Rd NE, Atlanta, Georgia 30324. At all times mentioned herein, Allure is/was an "employer", or "joint employer" as defined by the FLSA, 29 U.S.C. § 203(d) and (g). Allure may be served via its agent for service of process, Nicholas A. Stergion, at 3520 Waters Cove Way, Alpharetta, Georgia, 30022.

17.

Defendants may be served under Rule 4 of the Federal Rules of Civil Procedure.

18.

Defendant Carmen Popovich is the co-owner and CFO of the business located at 2284 Cheshire Bridge Rd NE, Atlanta, Georgia 30324.  At all times mentioned herein, Girls Galore Inc. d/b/a Allure is/was an "employer", or "joint employer" as defined by the FLSA, 29 U.S.C. § 203(d) and (g).  Defendant Carmen Popovich can be served at 10625 Roxburgh Ln, Roswell, Georgia 30076.

19.

Defendant Victor Popovich is the co-owner and CFO of the business located at 2284 Cheshire Bridge Rd NE, Atlanta, Georgia 30324.  At all times mentioned herein, Girls Galore Inc. d/b/a Allure is/was an "employer", or "joint employer" as defined by the FLSA, 29 U.S.C. § 203(d) and (g).  Defendant Carmen Popovich can be served at 10625 Roxburgh Ln, Roswell, Georgia 30076.

**INTERSTATE COMMERCE**

20.

Plaintiffs, other entertainers and other employees of Allure were engaged in commerce or the production of goods in commerce as defined by the FLSA.

21.

"The Fair Labor Standards Act (the 'FLSA'), 29 U.S.C. § 207(a) (1), requires an employer to pay overtime compensation to an hourly worker if the employee can

establish individual coverage or enterprise coverage." *Silver v. Dr. Neal Krouse, D.O., P.A.*, 06-60634-CIV, 2007 WL 4098879 *2 (S.D. Fla. Nov. 16, 2007) (citing *Thorne v. All Restoration Svcs., Inc.,* 448 F.3d 1264, 1265 (11th Cir.2006)). "To qualify for enterprise coverage, Defendants must 'ha[ve] employees engaged in commerce or in the production of goods for commerce, or ha[ve] employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and is an enterprise whose annual gross volume of sales made or business done is not less than $500,000.'" *Id*. (citing 29 U.S.C. § 203(s)(1)(A)(i) and (ii)). "The phase 'engaged in commerce' is interpreted broadly and liberally." *Id*. (citing *Alonso v. Garcia*, 147 Fed. Appx. 815, 816 (11th Cir. 2005)).

22.

Allure was an enterprise engaged in commerce.

23.

Allure was an enterprise engaging in interstate commerce by having multiple employees regularly selling alcoholic beverages produced and shipped from outside of the State of Georgia, regularly serving foods produced and shipped from outside of the State of Georgia and having multiple employees regularly processing out-of-state credit card sales in the furtherance of its business.

24.

Allure had out of state customers who regularly frequented the club.

25.

Allure had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

26.

Allure had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

27.

Girls Galore, Inc. and one of the Defendants, Nicholas A. Stergion, were previously sued for failure to pay minimum wage in two separate cases, *Barnes v. Girls Galore, Inc., et al.* and *Joseph Brummett, et al. v. Girls Galore, Inc., et al.*[1]

## **ENTERPRISE COVERAGE UNDER THE FLSA**

28.

---

[1] Both cases involve both exotic dancers and/or bartenders.  Girls Galore, Inc. was formerly known as "Bliss."  It maintains the same location, same corporate owners, same business hours, and same business model with respect to its exotic dancers. The only change of note is that the exotic dancers in the previous lawsuits were male whereas the current business model involves female exotic dancers.

From 2018 to 2022, two or more employees of Allure used or handled the following items that moved in interstate commerce that are necessary for performing its commercial purpose: liquor, beer, wine, non-alcoholic beverages, kitchen equipment, lighting equipment, office supplies and electronics.

29.

From 2018 to 2022, Allure had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" as defined in 29 U.S.C. § 203(s)(1)(A).

## CORPORATE EMPLOYER UNDER THE FLSA

30.

At all relevant times, Allure was a nightclub whose primary business is to provide entertainment in the form of nude and semi-nude female dancers and the sale of alcoholic beverages.

31.

Plaintiffs worked at Allure as exotic dancers from approximately September 2018 through at least December 2021.

32.

At all relevant times, the business operations of Allure were conducted through Defendant Girls Galore, Inc.

33.

At all relevant times, Girls Galore maintained all financial accounts used in the operation of Allure, including its payroll account.

34.

At all relevant times, Girls Galore paid all costs associated with the advertising, marketing, and promotion of Allure.

35.

At all relevant times, Girls Galore provided all facilities used in the performance of Plaintiffs' dancer work at Allure.

36.

At all relevant times, Plaintiffs were "employees" as defined in FLSA § 3(e), 29 U.S.C. § 203(e) in connection with their dancer work at Allure as a matter of economic reality.

37.

At all relevant times, Allure was Plaintiffs' "employer" as defined in FLSA § 3(d), 29 U.S.C. § 203(d) as a matter of economic reality.

38.

At all relevant times, Popovich and Stergion were the sole owners of Allure.

39.

At all relevant times, Popovich and Stergion had authority over the finances and operations of Allure.

40.

At all relevant times, Popovich and Stergion shared control over the employment practices and procedures of Allure.

41.

At all relevant times, Popovich and Stergion shared control over Allure's policy of classifying dancers as "independent contractors" for tax purposes.

42.

At all relevant times, Popovich and Stergion shared control over the terms of Plaintiffs' working conditions, including all rules applicable to Allure dancers.

43.

At all relevant times, Popovich and Stergion shared authority over Allure's policy and practice of having dancers work for tips only.

44.

At all relevant times, Popovich and Stergion shared control over Allure's record-keeping policies with respect to dancers' hours worked and monies received.

45.

At all relevant times, Stergion was an "employer" of the Plaintiffs as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

46.

At all relevant times, Popovich was an "employer" of the Plaintiffs as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

47.

At all relevant times, Girls Galore, Inc. was an "employer" of the Plaintiffs as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

48.

At all relevant times, John Does 1-3 were "employers" of the Plaintiffs as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

49.

Defendants willfully miscategorized entertainers/dancers who work at the club as independent contractors and required them to pay house fees as a condition of employment.

50.

The adult entertainers are paid no wages, receive no overtime pay and are required to remain at the club during hours in which it is impossible for them to earn

gratuities as the club is closed for business.  These requirements are direct violations of the FLSA.

51.

Entertainers/dancers are also required to share tips with others, including employees including but not limited to the "house mom" and the disc jockey ("DJ") who do not regularly or customarily receive tips.

52.

In addition, Defendants required their entertainers/dancers to share their tips even though Defendants did not provide their entertainers/dancers with notice of the tip credit provisions.

53.

As a result, Defendants failed to pay Plaintiffs minimum wage compensation they were entitled to under the Federal Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA").

## **COMMON FACTUAL ALLEGATIONS**

54.

Plaintiffs brings this action pursuant to 29 U.S.C. § 216(b).

55.

During the three years prior to the filing of this complaint Defendants owned

and operated Allure located in Atlanta, Georgia.

56.

Allure features nude female dancers.

57.

Defendants jointly owned, operated and managed Allure and were all involved in the day-to-day operation of the club.

58.

Defendants made the decision to misclassify the Plaintiffs and other similarly situated dancers as independent contractors rather than employees, and not pay them the minimum wage.

59.

Defendants made the decision to require the Plaintiffs and other similarly situated dancers to pay certain fees and tip-outs each shift.

60.

Allure directly and indirectly controlled dancers' work schedules by requiring them to work a minimum number of shifts and hours per shift or pay a monetary penalty for failure to do so.

61.

The Defendants and Allure's house moms and managers directly and

indirectly controlled the appearance and dress of dancers at Allure.

62.

The Defendants and Allure's house moms and managers had the authority to require dancers to change their appearance and attire at work.

63.

The Defendants and Allure's house moms and managers required dancers to change their appearance and attire at work.

64.

The Defendants and Allure's managers had the authority to suspend and discipline dancers.

65.

The Defendants and Allure's managers directly and indirectly supervised dancers on a day-to-day basis.

66.

The Defendants and Allure required dancers to attend meetings to discuss workplace issues.

67.

The Defendants and Allure used mandatory dancer meetings to discuss problems with dancer dress, hair, makeup, weight, and appearance, club promotional

efforts and other work-related issues.

68.

Defendants and Allure made all advertising, marketing and promotional decisions regarding the club and paid all costs associated with advertising, marketing and promoting the club.

69.

Defendants and Allure required customers to pay a "door fee" to enter the business and thus had ultimate authority as to which individuals were allowed to enter the club as customers.

70.

Defendants and Allure's managers and house moms had the discretion not to permit a dancer to perform if she arrived at a scheduled shift after a certain time.

71.

Allure's DJs have given dancers instructions to report to the stage and/or remove clothing while on stage.

72.

Allure's DJs called dancers to dance on stage on a set rotation established by the dancers' time of arrival.

73.

Allure enforced a mandatory check-out process for the club's dancers, which included the payment of various fees to the club and its managers, house moms, and DJs. It also included a mandatory breathalyzer test to test the alcohol intake of each dancer. The dancers were also charged $1.00 per test.

74.

Allure maintained and enforced written and unwritten rules of conduct for dancers.

75.

The duties of Allure's management included ensuring that dancers complied with club rules and policies.

76.

Allure provided all stages used for dancer performances at the Club.

77.

Allure provided poles used for dancer performances at the club.

78.

Allure was responsible for day-to-day purchases of liquor for sale at the club.

79.

Allure did not require the club's dancers to have prior experience as dancers or any formal or special training.

80.

When an individual wanted to work as a dancer at Allure, a house mom and manager generally performed a "body check" to determine if the individual's body was suitable for performing at the club.

81.

Allure required Plaintiffs to work a minimum number of days per week, including a minimum number of "slow days," or pay fines.

82.

Allure advertised its business using pictures of scantily clad women.

83.

The presence of nude dancers was integral to Allure's business success and operations.

84.

Plaintiffs did not have their own business entities or employees associated with their dance work, and the job required no management of other employees.

85.

Plaintiffs and similarly situated dancers were "employees" as that term is used in the FLSA, rather than independent contractors, as a matter of economic reality.

86.

Defendants were the "employers" of Plaintiffs and similarly situated dancers as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

87.

Plaintiffs and similarly situated dancers were not exempt from the minimum wage or overtime requirements of the FLSA.

88.

Defendants paid no wages or other compensation to Plaintiffs.

89.

Plaintiffs and similarly situated dancers worked entirely for tips paid by Allure's customers.

90.

Defendants intentionally classified Plaintiffs as independent contractors.

## COLLECTIVE ACTION ALLEGATIONS

91.

As alleged herein, Defendants are liable under the FLSA for willfully failing to properly compensate Plaintiffs and all other similarly situated current and former adult entertainers employed by Defendants during the three-year period prior to commencement of this action, and as such, notice should be sent to past and present adult entertainers employed by Defendants during the three-year period prior to

initiation of this action, pursuant to 29 U.S.C. § 216(b).

92.

As alleged herein, Defendants deprived Plaintiffs and other similarly situated adult entertainers of compensation to which they are entitled through the following singular practices, decisions or plans:

(a) Requiring adult entertainers to work without compensation;

(b) Requiring adult entertainers to perform work without compensation during times for which they could not receive tips;

(c) Refusing to compensate adult entertainers one- and one-half times minimum wage when their total hours worked in a week exceeded 40 hours;

(d) Requiring adult entertainers to share tips with non-tipped employees; and

(e) Requiring adult entertainers to pay fees for the right to work.

93.

Based thereon, Defendants have repeatedly and intentionally engaged in a similar practice, commonly and typically applied to the class of adult entertainers, of improperly depriving compensation to which such adult entertainers are entitled under the FLSA.

94.

Questions that are common among the FLSA Collective Action members include, but are not limited to:

(a) whether Defendants have and continue to unlawfully refuse to pay adult entertainers proper compensation, in violation of the FLSA, 29 U.S.C. § 201, *et seq.*, for all work performed;

(b) whether Defendants have and continue to unlawfully refuse to pay adult entertainers proper overtime compensation, in violation of the FLSA, 29 U.S.C. § 201, *et seq.*, through the aforementioned policies and practices;

(c) whether Defendants' failure to pay such proper compensation is willful within the meaning of the FLSA.

95.

There are numerous similarly situated current and former adult entertainers employed by Defendants in venues owned and/or operated by the Defendants who have been subject to the same policies and practices alleged herein, in violation of the FLSA, and who would benefit from the issuance of a Court-supervised notice of the present lawsuit and the opportunity to join in the present lawsuit. Those similarly situated employees are known to Defendants and are readily identifiable by Defendants' records.

96.

Plaintiffs, on behalf of themselves and other similarly situated current and former employees, bring this collective action against Defendants under the FLSA, 29 U.S.C. § 201, *et seq.* for failure to pay minimum wage and overtime compensation.

97.

Plaintiffs and others similarly situated (the "FLSA Collective") are individuals who are current and former adult entertainer employees of Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

## COUNT ONE
## VIOLATION OF 29 U.S.C. §§ 206 AND 215

98.

Paragraphs 1 through 98 are incorporated herein by this reference.

99.

Plaintiffs and similarly situated dancers were employees covered by the FLSA and entitled to the minimum wage protections set forth in FLSA § 6(a), 29 U.S.C. § 206(a).

100.

Defendants failed to compensate Plaintiffs and similarly situated dancers at an hourly rate above or equal to the minimum wage.

101.

Defendants willfully failed to compensate Plaintiffs and similarly situated dancers at an hourly rate above or equal to the minimum wage.

102.

Plaintiffs and similarly situated dancers are entitled to payment of their minimum wages in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

103.

Defendants' requirement that Plaintiffs and similarly situated dancers pay fees and fines to Allure and its managers, house moms, and DJs violated the "free and clear" requirement of 29 CFR 531.35.

104.

Plaintiffs and similarly situated dancers are entitled to receive all unpaid minimum wages from Defendants for the hours that they worked.

105.

Plaintiffs and similarly situated dancers are entitled to recover from Defendants as part of their wage loss, all fees, tip-outs and fines that they were required to pay in order to work at Allure.

106.

Defendants' violation of the FLSA was willful.  In other words, Defendants

knew or showed reckless disregard for the fact that their wage and "pay to work" policies violated the FLSA.

107.

As a result of Defendants' willful underpayment of minimum wages as alleged above, Plaintiffs are entitled to liquidated damages in accordance with FLSA §16(b), 29 U.S.C. § 216(b).

108.

Defendants failed to act in good faith in implementing and enforcing their wage and "pay to work" policies and their implementation and enforcement of these policies were unreasonable.

109.

Defendants violated the record keeping requirements of the FLSA.

110.

As a result of its underpayment of minimum wages as alleged above, Defendants are jointly and severally liable to Plaintiffs for their litigation costs, including their reasonable attorney's fees, in accordance with FLSA §16(b), 29 U.S.C. § 216(b).

**COUNT TWO:**
**REIMBURSEMENT OF HOUSE FEES AND TIPS**

111.

Plaintiffs herein incorporate paragraphs 1 through 98 above by reference as if fully set forth herein.

112.

Defendants further violated the FLSA by requiring the Plaintiffs and similarly situated exotic dancers to pay house fees and tip-outs as a condition of employment.

113.

Defendants' house fee and tip-out requirement benefitted the Defendants and caused the Plaintiffs' and similarly situated exotic dancers' potential wages to fall well below the minimum wage.

114.

Pursuant to the FLSA, specifically 29 CFR § 531.35, wages must be paid "free and clear."

115.

29 CFR § 531.35, states in part "wages cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or free and clear. The wage requirements of the Act will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee."

116.

The house fees paid by the Plaintiffs and similarly situated exotic dancers constitute "illegal kickbacks" pursuant to 29 CFR § 531.35.

117.

The tip-outs paid by the Plaintiffs and similarly situated exotic dancers to the house mom the DJ and security constitute "illegal kickbacks" pursuant to 29 CFR § 531.35.

118.

These sums must be returned to the Plaintiffs and similarly situated exotic dancers to bring Defendants' minimum wage obligations to the Plaintiffs and similarly situated exotic dancers consistent with the requirements of the FLSA.

119.

Defendants' policy of house fees and tip-outs were not recorded in the federal and state tax returns or gross receipts.

120.

Defendants did not record the number of fees for table and lap dances performed by the Plaintiffs and similarly situated exotic dancers during the duration of Plaintiffs' employment.

121.

Defendants are not entitled to a set off or tip credit for sums earned by the Plaintiffs and similarly situated exotic dancers.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs request that this Court:

a.   Enter a declaratory judgment or order finding that (i) each Plaintiff is an "employee" under the FLSA; (ii) Defendants are "employers" as that term is defined under the FLSA; and (iii) Defendants violated the minimum wage and record keeping provisions of the FLSA;

b.   Award Plaintiffs an amount to be determined at trial against Defendants for unpaid minimum wages, including unlawful deductions due under the FLSA;

c.   Award Plaintiffs reimbursement of all tip-outs, house fees, and all other sums unlawfully paid to Allure;

d.   Award Plaintiffs liquidated damages against Defendants in the same amount as their unpaid minimum wages;

e.   Award Plaintiffs prejudgment interest on all amounts owed;

f.   Award Plaintiffs their reasonable attorney's fees and costs of litigation under the FLSA; and

g.      Award any and such other relief this Court deems just, equitable and

proper.

/s/ Mutepe Akemon
Mutepe Akemon
GA Bar No. 434260
mutepe.akemon@richardslegal.com

**The Richards Law Group, LLC**
P.O. Box 360295
Decatur, GA 30036
Telephone: 404-289-6816
Facsimile:   404-795-0727
*Counsel for Plaintiffs*